1  Anthony R. Bisconti, State Bar No. 269230
   tbisconti@bklwlaw.com
2  **BIENERT KATZMAN LITTRELL WILLIAMS LLP**
   360 W. 2nd Street, Ste. 625
3  Los Angeles, CA 90012
   Telephone (213) 528-3400
4  Facsimile (949) 369-3701

5  Attorneys for Specially-Appearing Defendants
   TL x HF LLC and Loyalist, LLC
6

7              UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9

10  COLLEGESTREET IMPORT &          Case No. 3:23-cv-02303-AGT
    EXPORT (TIANJIN) CO., LTD.,
11                                  **SPECIALLY APPEARING
                                    DEFENDANTS TL X HF LLC
12              Plaintiff,          AND LOYALIST, LLC'S
                                    OPPOSITION TO PLAINTIFF'S
13       v.                         APPLICATIONS FOR WRIT OF
                                    ATTACHMENT AND
14  XL X HF LLC, LOYALIST, LLC, and ATTACHMENT ORDERS;
    DOES 1 -20, inclusive,          DECLARATIONS OF MAXWELL
15                                  RITZ AND ALEXANDER RITZ**
16              Defendants.
                                    [Removed from the Superior Court of
17                                  the State of California, County of
                                    Alameda]
18
                                    Alameda Superior Court
19                                  Case No. 23CV028584
20
                                    Action Filed:  March 2, 2023
21                                  Trial Date:     None Set
22
                                    <u>Hearing Information:</u>
23                                  Date:  June 16, 2023
                                    Time:  10:00 a.m.
24                                  Place: 450 Golden Gate Ave.
                                           15th Floor – Ctrm A
25                                         San Francisco, CA 94102
26

27

28

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT AND SUMMARY OF FACTS ............... 1

II.   THE COURT SHOULD DENY THE APPLICATIONS ........................... 2

      A.   Summary of applicable law ................................................ 2

      B.   The Applications fail to establish the probable validity of Plaintiff's
           claims. ............................................................................ 3

           1.   The Court lacks personal jurisdiction over Defendants. ................. 4

                (a) Legal standard. ................................................. 5

                (b) Defendants are not subject to general jurisdiction. ........................... 6

                (c) Defendants are not subject to specific jurisdiction. ........................... 7

           2.   The Applications are not supported by competent evidence. ........... 9

           3.   Claims against Loyalist are barred by the CUPAR release. ........... 13

           4.   Loyalist is not the alter ego of TLxHF ............................... 15

                (a) Plaintiff has not established a "unity of interest." ............................ 17

                (b) Plaintiff has not established inequity would result by respecting
                    Defendants' separate corporate identities. ........................... 19

           5.   Plaintiff fails to establish a sum due and owing. ........................... 21

      C.   Plaintiff has not presented evidence that Defendants have any assets
           located in California subject to attachment. ........................... 22

      D.   Plaintiff is not entitled to a temporary protective order. ................... 22

      E.   If the Court grants the Applications, Plaintiff should be required to
           post a substantial undertaking. ........................................... 24

III.  CONCLUSION ........................................................... 25

i

# TABLE OF AUTHORITIES

*Cases*                                                                  *Page(s)*

*21st Century Fin. Servs., LLC v. Manchester Fin. Bank,*
    255 F. Supp. 3d 1012 (S.D. Cal. 2017) ............................................... 16

*Advanced Eng'g Sols. Co., LLC v. Pers. Corner, LLC,*
    2021 WL 1502705 (C.D. Cal. Feb. 25, 2021) ...................................... 19

*Alvarez v. Castellon,*
    55 A.3d 352 (Del. 2012)....................................................................... 13

*American Student Financial Group, Inc. v. Aequitas Capital Management, Inc.,*
    2014 WL 12772263 (S.D. Cal. 2014) ................................................... 25

*Arabian Gas and Oil Dev. Co. v. Wisdom Marines Lines, S.A.,*
    2017 WL 1175592 (N.D. Cal. 2017)..................................................... 24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................ 5

*BNSF Railway Co. v. Tyrell,*
    137 S. Ct. 1549 (2017) ............................................................................ 7

*Bowoto v. Chevron Texaco Corp.,*
    312 F. Supp. 2d 1229 (N.D. Cal. 2004) ............................................... 20

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,*
    137 S. Ct. 1773 (2017) ............................................................................ 5

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ................................................................................ 8

*Calvert v. Huckins,*
    875 F. Supp. 674 (E.D. Cal. 1995) ...................................................... 16

*Cambridge Electronics Corp. v. MGA Electronics, Inc.,*
    227 F.R.D. 313 ..................................................................................... 21

*Corcoran v. CVS Health Corp.,*
    169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................... 5

ii

*Corporate Property Assocs. 6 v. Hallwood Grp., Inc.*,
   817 A.2d 777 (Del. 2003) .................................................................... 15

*Daewoo Elecs. Am. Inc. v. Opta Corp.*,
   875 F.3d 1241 (9th Cir. 2017) ............................................................ 19

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ........................................................................ 6, 7

*Deuley v. DynCorp Int'l, Inc.*,
   8 A.3d 1136 (Del. 2010) .................................................................... 13

*Deuley v. DynCorp Int'l, Inc.*,
   8 A.3d 1156 (Del. 2010) .................................................................... 15

*Electro Scan*,
   2019 WL 1299010 ............................................................................... 8

*Epstein v. Abrams*,
   57 Cal. App. 4th 1159 (1997) ............................................................... 3

*GemCap Lending I, LLC v. Pertl*,
   2019 WL 6468580 (C.D. Cal. Aug. 9, 2019) ........................................ 6

*Goldstein v. Barak Constr.*,
   164 Cal. App. 4th 845 (2008) ............................................................ 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ............................................................................ 6

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ............................................................................ 8

*Helicopteros Nacionales de Columbia v. Hall*,
   446 U.S. 408 (1984) ............................................................................ 7

*Hob Tea Room v. Miller*,
   89 A.2d 851 (Del. 1952) .................................................................... 15

*In re Mission Ins. Co.*,
   41 Cal. App. 4th 828 (1995) .............................................................. 14

*In re Philadelphia Stock Exch., Inc.*,

   945 A.2d 1123 (Del. 2008)...................................................................15

*In re Schwarzkopf*,

   626 F.3d 1032 (9th Cir. 2010)..............................................................16

*LA Printex v. M & A Imports Ltd.*,

   2013 WL 12133690 (C.D. Cal. July 19, 2013) .................................5, 7

*Loeb & Loeb v. Beverly Glen Music, Inc.*,

   166 Cal. App.3d 1110 (1985)..................................................................3

*Lorber Indus. of Cal. v. Turbulence, Inc.*,

   175 Cal. App. 3d 532 (1985)........................................................... 10, 12

*Lydig Construction, Inc. v. Martinez Steel Corp.*,

   234 Cal. App. 4th 937 (2015).................................................................9

*Menken v. Emm*,

   503 F.3d 1050 (9th Cir. 2007)................................................................8

*Mid-Century Ins. Co. v. Gardner*,

   9 Cal.App.4th 1205 (1992)...................................................................20

*Neilson v. Union Bank of Cal., N.A.*,

   290 F. Supp. 2d, 1101 (C.D. Cal. 2003)..............................................17

*North Hollywood Marble Co. v. Superior Court*,

   157 Cal. App. 3d 683 (1984).................................................................25

*Pac. Decision Sciences Corp. v. Superior Court*,

   121 Cal. App. 4th 1100 (2004)..............................................................22

*Paul H. Ashchkar & Co. v. Curtis*,

   327 F.2d 306 (9th Cir.1963).................................................................22

*Perez v. Indian Harbor Ins. Co.*,

   2020 WL 2322996 (N.D. Cal. May 11, 2020) .......................................5

*Perkins v. Benguet Consolidated Mining Co.*,

   342 U.S. 437 (1952).................................................................................7

*Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*,
  112 F. Supp. 2d 1178 (C.D. Cal. 2000) ............................................................ 10

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) .......................................................... 5, 6, 7, 18

*Ruiz v. Gen. Ins. Co. of Am.*,
  2020 WL 4018274 (E.D. Cal. July 15, 2020) .................................................. 17

*San Diego Hospice v. Cnty. of San Diego*,
  31 Cal. App. 4th 1048 (1995) .......................................................................... 14

*Sandoval v. Ali*,
  34 F. Supp. 3d 1031 (N.D. Cal. 2014) ...................................................... 17, 18

*Santa Clarita Org. for Planning & Env't v. Castaic Lake Water Agency*,
  1 Cal. App. 5th 1084 (2016) ........................................................................... 16

*Seven Invs., LLC v. AD Cap., LLC*,
  32 A.3d 391 (Del. Ch. 2011) ..................................................................... 13, 14

*Seymour v. Hull & Moreland Engineering*,
  605 F.2d 1105 (9th Cir. 1979) ........................................................................ 20

*Skrbina v. Fleming Cos.*,
  45 Cal. App. 4th 1353 (1996) ......................................................................... 14

*Sonora Diamond Corp. v. Superior Court*,
  83 Cal. App. 4th 523 (2000) ..................................................................... 17, 20

*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) .............................................................. 18

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ............................................................................ 6

*Tomaselli v. Transamerica Ins. Co.*,
  31 Cal. Rptr. 2d 433 (1994) ............................................................................ 19

*Towe Antique Ford Found. v. I.R.S.*,
  999 F.2d 1387 (9th Cir.1993) .......................................................................... 16

*VFS Financing, Inc. v. CHF Express,* LLC,

    620 F. Supp. 2d 1092 (C.D. Cal. 2009) ............................................. 10, 11, 12, 17

*Vons Cos., Inc. v. Seabest Foods, Inc.*,

    14 Cal. 4th 434 (Cal. 1996) ................................................................................. 7

*Walden v. Fiore*,

    571 U.S. 277 (2014) ........................................................................................ 7, 8

*Walters v. Newberry*,

    2006 WL 3201042 (N.D. Cal. Nov. 6, 2006) .................................................... 23

*Western Steel and Ship Repair, Inc. v. RMI, Inc.*,

    176 Cal. App. 3d 1108 (1986) .......................................................................... 23

*Williams v. Yamaha Motor Co. Ltd.*,

    851 F.3d 1015 (9th Cir. 2017) ....................................................................... 6, 16

*Windsor I, LLC v. CWCapital Asset Mgmt. LLC*,

    2019 WL 4733430 (Del. Super. Ct. Sept. 27, 2019) ........................................ 15

*World-Wide Volkswagen Corp. v. Woodson*,

    444 U.S. 286 (1980) .......................................................................................... 8

***Statutes***

11 U.S.C. section 101 ............................................................................................ 3

Cal. Civ. Code § 488.020(a) ............................................................................... 22

Cal. Code Civ. Proc. § 484.010 ............................................................................. 2

Cal. Code Civ. Proc. § 484.030 ............................................................................. 9

Cal. Code Civ. Proc. § 484.100 ............................................................................. 3

Cal. Code Civ. Proc. § 486.010(b) ...................................................................... 23

Cal. Code Civ. Proc. § 489.220 ........................................................................... 24

Cal. Code Civ. Proc. § 490.020(a) ....................................................................... 24

Cal. Code Civ. Proc. § 490.020(b) ....................................................................... 25

Cal. Code Civ. Proc. §§ 482.040, 484.030 ........................................... 9, 10, 11, 12

Cal. Code Civ. Proc § 446(a) .................................................................. 11, 12, 17

Cal. Code Civ. Proc § 489.220(b) .......................................................... 24

Cal. Evid. Code § 1271 ........................................................................... 10

Cal. Evid. Code §§ 1400–1421 ............................................................... 10

***Rules***

Fed. R. Civ. P. 12(b)(2)

Fed. R. Evid. 601, 602, 901 .............................................................. 12, 13

Fed. R. Evid. 701-703 ............................................................................. 13

Fed. R. Evid. 801-802 ...................................................................... 12, 13

Fed. R. Evid. 803(6), 902(11) ................................................................ 10

Fed. R. Evid. 901–902 ............................................................. 10, 12, 13

TABLE OF AUTHORITIES

1   Specially-appearing Defendants TL x HF, LLC[1] ("TLxHF") and the Loyalist,

2   LLC ("Loyalist" and, together with TLxHF the "Defendants" and each a

3   "Defendant") file this consolidated opposition to the applications filed by Plaintiff

4   CollegeStreet Import & Export (Tianjin) Co., Ltd. ("CollegeStreet" or "Plaintiff"),

5   seeking issuance of right to attach orders against each Defendant (the

6   "Applications") [Dkt. No. 6], as follows:

## I.      PRELIMINARY STATEMENT AND SUMMARY OF FACTS

8   Plaintiff is a China-based company claiming it entered an agreement with

9   TLxHF pursuant to which TLxHF agreed to assume $350,000 of a debt that was

10  owed to Plaintiff (the "Assumed Obligation") by a separate, unrelated entity named

11  Hillfint. Plaintiff alleges that this was carried out pursuant to a contract titled

12  "Transfer of Obligations and Issuance of Compensation in Lieu of Lien for

13  CollegeStreet" (the "Transfer Agreement"). According to Plaintiff, TLxHF made

14  "absolutely zero payment" to Plaintiff and breached the Transfer Agreement.

15  Plaintiff commenced this action against Defendants based on that alleged

16  breach, attempting to ensnare Loyalist in the suit based on threadbare and wholly

17  unsupported alter ego allegations. After the case was removed to this Court, Plaintiff

18  filed an amended complaint (the "FAC") and the Applications. Through the

19  Applications, Plaintiff seeks attachment orders against both TLxHF and Loyalist in

20  the amount of $350,000 each, which Plaintiff claims is the amount owed under the

21  Transfer Agreement.

22  The Court should deny the Applications because Plaintiff has not satisfied its

23  burden of establishing the probable validity of its claim against either Defendant,

24  for several reasons. First, and as set forth in Defendants' pending motion to dismiss

25  this case (the "Motion to Dismiss") [Dkt. No. 7], the Court lacks personal

---

[1] TLxHF has been erroneously named in this action as "XL x HF, LLC."

jurisdiction over Defendants, and therefore Plaintiff's claim against Defendants must be dismissed. Second, the Applications are not supported by any competent, admissible evidence, which also requires their denial. Third, as it relates to Plaintiff's request for an attachment order against Loyalist, the claim on which attachment is sought has been released against Loyalist and, in any event, Plaintiff has failed to establish the probable validity of its alter ego claim against Defendants. Finally, contrary to Plaintiff's claim that TLxHF has made "absolutely zero payment" to Plaintiff, in fact TLxHF has paid *at least* $350,000 to Plaintiff since November 2018 (the date the Transfer Agreement was allegedly executed); consequently, the Applications fail to establish the amount due and owing—if anything—to Plaintiff. Because Plaintiff has failed to establish the probable validity of its claim, and has failed to make *any* showing (or even argue) that it will suffer great or irreparable harm, the Court must also deny Plaintiff's request for issuance of temporary protective orders.

For these reasons, and as explained more fully below, the Court should deny the Applications in their entirety.

## II. THE COURT SHOULD DENY THE APPLICATIONS

### A. Summary of applicable law.

"Upon the filing of the complaint or at any time thereafter, the plaintiff may apply . . . for a right to attach order and a writ of attachment by filing an application for the order and writ with the court in which the action is brought." Cal. Code Civ. Proc. § 484.010. The application shall be executed under oath and must include: (1) a statement showing that the attachment is sought to secure the recovery on a claim upon which an attachment may be issued; (2) a statement of the amount to be secured by the attachment; (3) a statement that the attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based; (4) a statement that the applicant has no information or belief that the claim is

discharged or that the prosecution of the action is stayed in a proceeding under the Bankruptcy Act (11 U.S.C. section 101 et seq.); and (5) a description of the property to be attached under the writ of attachment and a statement that the plaintiff is informed and believes that such property is subject to attachment. *Id.* § 484.020.

"The application [for a writ of attachment] shall be supported by an affidavit showing that the plaintiff on the facts presented would be entitled to a judgment on the claim upon which the attachment is based." *Id.* § 484.030. The Court shall issue a right to attach order if the Court finds **all** the following: (1) The claim upon which the attachment is based is one upon which an attachment may be issued; (2) the plaintiff has established the probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based; and (4) the amount to be secured by the attachment is greater than zero. *Id.* § 484.090.

**B.     The Applications fail to establish the probable validity of Plaintiff's claims.**

"A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." *Id.* § 481.190. "The Attachment Law statutes are subject to strict construction." *Epstein v. Abrams*, 57 Cal. App. 4th 1159, 1168 (1997). In determining the probable validity of a claim, "the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App.3d 1110, 1120 (1985). However, the court's determination in an attachment proceeding "shall have no effect" on the main action. Cal. Code Civ. Proc. § 484.100.

Here, while the FAC contains four causes of action, the Applications argue *only* that Plaintiff has established the probable validity of the first cause of action

OPPOSITION TO PLAINTIFF'S APPLICATIONS FOR WRIT OF ATTACHMENT AND ATTACHMENT ORDERS

for breach of contract (i.e., breach of the Transfer Agreement).[2] *See* Dkt. No. 6 at 7:24-8:28. As set forth below, Plaintiff has not established the probable validity of this claim because (i) all claims against the Defendants must be dismissed because the Court lacks personal jurisdiction over them, (ii) the Applications are not supported by any competent, admissible evidence as is strictly required for issuance of attachment orders, (iii) as to Loyalist, the claim has been released and its liability for breach of the Transfer Agreement is contingent upon Plaintiff establishing that Loyalist is TLxHF's alter ego, which it has failed to do, and (iv) Plaintiff has not established a sum due and owing to it because Plaintiff has failed to account for the more than $350,000 that TLxHF has paid to it since November 2018. The Court should therefore deny the Applications.

### 1.    The Court lacks personal jurisdiction over Defendants.

As a preliminary matter, and as set forth in Defendants' pending Motion to Dismiss [Dkt. No. 7], this entire action must be dismissed because the Court lacks personal jurisdiction over Defendants. The Motion to Dismiss is scheduled to be heard June 30, 2023. Because the Court's ruling on Defendants' Motion to Dismiss is likely to be determinative on the issues that are the subject of the Application, the Court should defer ruling on the Application until after the Motion to Dismiss is heard.

In any event, Defendants expressly reserve all arguments disputing the Court's ability to exercise personal jurisdiction over them in this action. Defendants also oppose the Applications due to the same jurisdictional defect and set forth that

---

[2] Because Plaintiff argues only the probable validity of its breach of contract claim, and moves seeks attachment based only upon that claim, Defendants do not address the other causes of action alleged in the FAC. Defendants maintain that Plaintiff has not (and cannot) establish the probable validity of those claims either and reserves the right to dispute the same in the event Plaintiff seeks similar relief based upon any of those claims in the future.

OPPOSITION TO PLAINTIFF'S APPLICATIONS FOR WRIT OF ATTACHMENT
AND ATTACHMENT ORDERS

argument below. Plaintiff cannot establish the probable validity of its breach of contract claim where the Court lacks personal jurisdiction over Defendants to adjudicate that claim.

### (a)   Legal standard.

A federal court sitting in diversity applies the law of the state in which it sits. *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 978 (N.D. Cal. 2016) (citation omitted). Under California's long-arm statute, California courts may exercise due "personal jurisdiction to the full extent permitted by federal due process." *Perez v. Indian Harbor Ins. Co.*, 2020 WL 2322996, at 2 (N.D. Cal. May 11, 2020).

Courts recognize two types of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1779-80 (2017). Specific jurisdiction is proper when a defendant has certain contacts with the forum state, and the plaintiff's cause of action arises out of those contacts. *Id.* at 1780. In contrast, "[a] court with general jurisdiction may hear *any* claim against that defendant," even if that claim is unrelated to the out-of-state defendant's contacts with that forum." *Id.*

"[T]he plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). Allegations to support the assertion of personal jurisdiction—no less than allegations to state a claim—"must comport with the pleading standard as clarified in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)" to survive dismissal. *LA Printex v. M & A Imports Ltd.*, 2013 WL 12133690, at *1 (C.D. Cal. July 19, 2013) (citations omitted).

Thus, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden" to avoid dismissal for lack of personal jurisdiction

1  under FRCP 12(b)(2). *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

2  "[T]he Court may decide a question of personal jurisdiction on the basis of

3  affidavits and documentary evidence submitted by the parties, or may hold an

4  evidentiary hearing on the matter," but the plaintiff continues to bear the burden

5  "whichever procedure is used." *GemCap Lending I, LLC v. Pertl*, 2019 WL

6  6468580, at * 6 (C.D. Cal. Aug. 9, 2019) (internal quotation marks omitted).

7  **(b)    Defendants are not subject to general jurisdiction.**

8  "Under *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915

9  (2011), courts have general jurisdiction over a foreign corporation only if the

10  corporation's connections to the forum state 'are so continuous and systematic as to

11  render it essentially at home in the forum State.'" *Williams v. Yamaha Motor Co.*

12  *Ltd.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (quoting *Goodyear*, 564 U.S. at 919). "A

13  corporation's 'continuous activity of some sorts within a state is generally not

14  enough to support the demand that the corporation be amenable to suits unrelated

15  to that activity." *Id.* Rather, "the place of incorporation and principal place of

16  business are 'paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*,

17  571 U.S. 117, 137 (2014) (emphasis added). Indeed, it is only in an "exceptional

18  case" that a corporation will be deemed "at home" for purposes of general

19  jurisdiction anywhere other than its place of incorporation and principal place of

20  business. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015).

21  Here, Plaintiff admits that both Defendants are Delaware limited liability

22  companies with their principal places of business in New York. Dkt. No. 6 at 7:15-

23  17; FAC ¶¶ 8-9. Defendants are therefore "at home" and subject to general

24  jurisdiction in Delaware and New York—not California. Plaintiff does not even

25  attempt to allege (and cannot plausibly do so in any event) the type of "constant and

26  pervasive" contacts that are required for this Court to conclude that this is an

27  "exceptional case" in which general jurisdiction is nevertheless present. *Ranza*, 793

28

F.3d at 1069–70.[3] Indeed, the FAC does not even bother to allege that Defendants have *any* contacts with California; rather, the only reference to California is that *Plaintiff*—a China limited company—conducts some business in California. *See* FAC ¶ 7. This, of course, is insufficient to establish personal jurisdiction over *Defendants*. *See LA Printex*, 2013 WL 12133690, at *1 (threadbare conclusory allegations related to jurisdiction fail under *Iqbal*).

Accordingly, Defendants are not subject to general jurisdiction here.

### (c)   Defendants are not subject to specific jurisdiction.

For specific jurisdiction to exist, "the ***defendant's*** suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added). A defendant "may be subject to the specific jurisdiction of the forum, if the defendant has purposefully availed himself or herself of forum benefits, and the controversy is related to or arises out of a defendant's contacts with the forum." *Vons Cos., Inc. v. Seabest Foods, Inc.*, 14 Cal. 4th 434, 446 (Cal. 1996), *quoting Helicopteros Nacionales de Columbia v. Hall*, 446 U.S. 408, 414-415 (1984) (citations omitted). Here, Plaintiff does not allege, and cannot show, that Defendants purposely availed themselves to the benefits of California.

---

[3] The Supreme Court has found only one example of an "exceptional case" where general jurisdiction is appropriate in a forum that is not the defendant's place of incorporation or principal place of business. In *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), the defendant's usual home (the Philippines) had been invaded and occupied during World War II, and its president thereafter directed all corporate activity from Ohio, making Ohio the company's "principal, if temporary, place of business," *Daimler*, 571 U.S. at 130, and, "given the wartime circumstances," a "surrogate for the place of incorporation or head office," *id.* at 130 n.8 (quotation marks omitted); *accord BNSF Railway Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017).

The "purposeful availment" requirement severely restricts jurisdiction over nonresidents. Jurisdiction exists only where there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). It is essential that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Stated another way, it does not allow jurisdiction "solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted); *accord Walden v. Fiore* (2013) 571 U.S. 277 (no Nevada jurisdiction over Georgia resident where acts complained of took place in Georgia to a Nevada plaintiff).

Here, Plaintiff does not and cannot allege any suit-related conduct by Defendants, or any facts suggesting that Plaintiff's claims arise out of any alleged conduct by Defendants in California. The absence of *any* allegations or evidence of any conduct by Defendants in California prevents the Court from finding Plaintiff's breach of contract claim has probable validity. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (emphasis added); *see also Electro Scan*, 2019 WL 1299010, at *5 (dismissing claims for lack of personal jurisdiction where plaintiffs did not allege any connection between defendants' California activities and their alleged harm). Further, the only alleged conduct by Defendants relate to the execution of the agreements that are attached as exhibits to the FAC, which Plaintiff alleges were drafted by Defendants (in New York). Even assuming Plaintiff's allegations were true, a New York company, entering a contract that was drafted in New York and with a China-based company, would not create any obvious connection with California. There is no venue selection clause that would give California

jurisdiction, and only the "Common United Purchase Agreement and Release" ("CUPAR") agreement contains a choice of law provision—selecting Delaware, not California, as the governing law for the agreement. *See* FAC Ex. A, § 8 ("This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, as such laws are applied to contracts entered into and performed in such State."). Plaintiff therefore has not established that this Court has specific jurisdiction over Defendants.

Because Plaintiff has not and cannot meet its burden of establishing that the Court has personal jurisdiction over them, Plaintiff cannot establish the probable validity of its contract claim.

### 2. The Applications are not supported by competent evidence.

Plaintiff has also failed to establish the probable validity of its claim because, in contravention of the applicable attachment statute, the Applications are not supported by *any* competent, admissible evidence. This failure is fatal to the Applications and requires denial.

An application for a right to attach order must be supported by admissible evidence. Cal. Code Civ. Proc. §§ 482.040, 484.030; *Lydig Construction, Inc. v. Martinez Steel Corp.*, 234 Cal. App. 4th 937, 944 (2015) ("This means that the affiant or declarant must show actual, personal knowledge of the relevant facts, rather than the ultimate facts commonly found in pleadings, and such evidence must be admissible and not objectionable."). The evidence must be sufficient to show that the applicant, on the facts presented, would be entitled to a judgment on the claim upon which the attachment is based. Cal. Code Civ. Proc. § 484.030.

The affidavit or declaration supporting the application must state facts "with particularity" and must show that the affiant or declarant, if sworn as a witness, can testify competently to the facts stated therein. *Id.* § 482.040. "The Court, in considering an application for right to attach order and writ of attachment, must

9

'apply the same evidentiary standard to an attachment hearing decided on affidavits and declarations as to a case tried on oral testimony.'" *VFS Financing, Inc. v. CHF Express,* LLC, 620 F. Supp. 2d 1092, 1095 (C.D. Cal. 2009) (citing *Goldstein v. Barak Constr.*, 164 Cal. App. 4th 845, 852 (2008); *Lorber Indus. of Cal. v. Turbulence, Inc.*, 175 Cal. App. 3d 532, 535 (1985)). "At a minimum, this means that the affiant or declarant must show actual, personal knowledge of the relevant facts, rather than the ultimate facts commonly found in pleadings, and such evidence must be admissible and not objectionable." *Id.* (quoting *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 2000)).

All documentary evidence submitted in support of an application for right to attach order, including contracts, must be presented in admissible form, generally requiring proper identification and authentication, and admissibility as nonhearsay evidence or under one or more of the exceptions to the hearsay rule. *Pos-A-Traction, Inc.*, 112 F. Supp. 2d at 1182. Regarding authentication, evidence should be presented to prove the genuineness of the signatures or a declaration from the custodian of records laying a foundation for the document's admission into evidence. *Id.*; Fed. R. Evid. 901–902; Cal. Evid. Code §§ 1400–1421. "For business records, and to show trustworthiness, evidence should be presented to establish that the record was made in the regular course of business, at or near the time of the act or event, and the custodian of records or other qualified witness must identify the record and its mode of preparation, as well as the sources of information and method and time of preparation." *Pos–A–Traction, Inc.,* 112 F. Supp. 2d at 1182; Fed. R. Evid. 803(6), 902(11); Cal. Evid. Code § 1271.

Here, the Applications are based solely upon Plaintiff's purportedly "verified" FAC, which is signed by Jin Zhang, CollegeStreet's owner and manager. As an initial matter, the verification attached to the FAC is defective and insufficient to verify the FAC or give any of the allegations in the FAC any evidentiary weight.

The verification does not even state that Ms. Jin Zhang reviewed the FAC or its allegations or believes them to be true and correct; rather, the verification states that "I believe, based on reasonable inquiry, *that the foregoing answers* are true and correct to the best of my knowledge, information, and belief." *See* FAC at 15. It appears that Plaintiff mistakenly used language from a prior verification for discovery responses. Regardless, this verification is insufficient to verify the FAC or its allegations. *See* Cal. Code Civ. Proc § 446(a) ("when the verification is made on behalf of a corporation or public agency by any officer thereof, the . . . officer's affidavit shall state that he or she has read the pleading and that he or she is informed and believes the matters therein to be true and on that ground alleges that the matters stated therein are true."). Accordingly, the Applications lack the support of any admissible evidence and must be denied on that basis alone.

Putting aside that fatal defect, while California law generally allows a verified complaint to be used in lieu of or in addition to affidavits, such usage is only allowed when the person verifying the complaint has knowledge of the facts in question and could "testify competently to the facts stated therein." *See* Cal. Code Civ. Proc. § 482.040. Here, Ms. Jin Zhang's purported verification does not support Plaintiff's Applications because it does not indicate she has personal knowledge of any of the purported facts set forth in the FAC, as it must. *VFS Financing, Inc.*, 620 F. Supp. 2d at 1097 (citation omitted). Neither the FAC nor its purported verification provide any foundational facts that would establish that Ms. Jin Zhang can authenticate any documents (including the exhibits attached to the FAC), nor do they establish that she is a custodian or other qualified individual regarding Plaintiff's corporate records or that she has any personal knowledge of anything alleged in the FAC or Applications.

"Moreover, in California, 'a verified []complaint [by a corporation] cannot support an . . . application for a right to attach order . . . .'" *Id.* (citing *Lober Indus.*

*of Cal.*, 175 Cal. App. 3d at 536 and Ahart, *California Practice Guide: Enforcing Judgments and Debts*, ¶¶ 4:142 (2009 rev.). Here, Plaintiff is a China-based company, and Ms. Jin Zhang has (attempted to) verify its FAC on its behalf, in her capacity as "owner and manager" of Plaintiff. *See* FAC at 15. Because Plaintiff's verification alone, even if it were not defective, cannot support an application for a right to attach order, the Court must deny the Applications. Plaintiff's purportedly verified FAC makes "no valid evidentiary showing" supporting Plaintiff's Application. *Id.*

In addition to the forgoing evidentiary objections, and pursuant to L.R. 7-3(a), Defendants also lodge the following evidentiary objections:

| **Evidence** | **Objection** |
|---|---|
| First Amended Complaint ("FAC") in its entirety | • Defective attestation [Cal. Code Civ. Proc § 446(a)]<br>• Improper evidentiary support for application for attachment orders [*VFS Financing, Inc.*, 620 F. Supp. 2d at 1097; *Lober Indus. of Cal.*, 175 Cal. App. 3d at 536]<br>• Lack of foundation/personal knowledge. [Cal. Code Civ. Proc. § 482.040; Fed. R. Evid. 601, 602, 901] |
| FAC Ex. A | • Foundation/authentication [Fed. R. Evid. 901]<br>• Lack of personal knowledge [Fed. R. Evid. 601-602]<br>• Hearsay [Fed. R. Evid. 801-802] |
| FAC ¶¶ 1-4 | • Lack of personal knowledge [Fed. R. Evid. 601-602]<br>• Lack of foundation [Fed. R. Evid. 901] |
| FAC ¶ 5 | • Foundation/authentication [Fed. R. Evid. 901]<br>• Lack of personal knowledge [Fed. R. Evid. 601-602]<br>• Hearsay [Fed. R. Evid. 801-802] |
| FAC ¶¶ 13-15 | • Foundation/authentication [Fed. R. Evid. 901]<br>• Lack of personal knowledge [Fed. R. Evid. 601-602] |
| FAC ¶¶ 16-18 | • Foundation/authentication [Fed. R. Evid. 901]<br>• Lack of personal knowledge [Fed. R. Evid. 601-602]<br>• Hearsay [Fed. R. Evid. 801-802] |
| FAC ¶¶ 19-20 | • Foundation/authentication [Fed. R. Evid. 901]<br>• Lack of personal knowledge [Fed. R. Evid. 601-602]<br>• Hearsay [Fed. R. Evid. 801-802] |

| FAC ¶¶ 21 | • Foundation/authentication [Fed. R. Evid. 901]<br>• Lack of personal knowledge [Fed. R. Evid. 601-602]<br>• Legal conclusion [Fed. R. Evid. 701-703] |
|---|---|
| FAC ¶¶ 21 | • Foundation/authentication [Fed. R. Evid. 901]<br>• Lack of personal knowledge [Fed. R. Evid. 601-602]<br>• Legal conclusion [Fed. R. Evid. 701-703]<br>• Hearsay [Fed. R. Evid. 801-802] |
| FAC ¶¶ 23-26 | • Foundation/authentication [Fed. R. Evid. 901]<br>• Lack of personal knowledge [Fed. R. Evid. 601-602] |
| FAC ¶¶ 27-36 | • Foundation/authentication [Fed. R. Evid. 901]<br>• Lack of personal knowledge [Fed. R. Evid. 601-602]<br>• Legal conclusion [Fed. R. Evid. 701-703] |
| FAC ¶¶ 38-45, 47-53, 55-63, 65-73 | • Foundation/authentication [Fed. R. Evid. 901]<br>• Lack of personal knowledge [Fed. R. Evid. 601-602]<br>• Legal conclusion [Fed. R. Evid. 701-703]<br>• Hearsay [Fed. R. Evid. 801-802] |

Because the Applications are not supported by competent, admissible evidence, the Court must deny them in their entirety.

### 3.  Claims against Loyalist are barred by the CUPAR release.

With respect to Plaintiff's Application seeking a right to attach order against Loyalist, Plaintiff has not established the probable validity of its claim because any such claim as against Loyalist is barred by the release in the CUPAR.

"Delaware courts uphold contractually valid general releases." *Alvarez v. Castellon*, 55 A.3d 352, 354 (Del. 2012) (citing *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1136, 1163 (Del. 2010)). Generally, "[i]f the claim falls within the plain language of the release, then the claim should be dismissed." *Seven Invs., LLC v. AD Cap., LLC*, 32 A.3d 391, 396 (Del. Ch. 2011). "Where the language of the release is clear and unambiguous, it will not lightly be set aside." *Id.* (cleaned up).[4]

---

[4] Because the CUPAR has a Delaware choice of law provision, Delaware law controls. But even under California law the result would be the same. *See Skrbina v. Fleming Cos.*, 45 Cal. App. 4th 1353, 1366 (1996) (It is well-settled law that a written release extinguishes any claim covered by its terms.); *see also San Diego*

1    Here, all claims alleged in the FAC against Loyalist have been released under

2    the contractual release language contained in the CUPAR. That language

3    specifically provides:

4         **RELEASE**. . . . In consideration of the transfer of the Units,
5         *Purchaser, on behalf of itself and on behalf of its affiliates,*
6         *successors in interest, predecessors in interest, beneficiaries,*
7         *assigns, agents, servants, representatives, and administrators*
8         *shall release, remise and forever discharge the Company,*
          Hillflint, and all their respective related entities, including but
9         not limited to, all past, present, and future parent or subsidiary
          entities, and all of their respective affiliates, directors, officers,
10        employees, agents, attorneys, stockholders, insurers, successors
          and/or assigns and any and all affiliates of each of the foregoing
11        entities and persons ("Company Releases"), *of and from any and*
12        *all claims, liabilities, demands, charges, causes of action, costs,*
          *expenses, penalties, attorneys' fees, damages, interest, awards,*
13        *indemnities and obligations of every kind and nature, in law,*
          *equity, or otherwise, which Purchaser asserts or could assert*
14        *against the Company Releases at common law or under any*
          *statute, rule, regulation, order or law, whether federal, state or*
15        *local, on any ground whatsoever, known and unknown,*
16        *suspected and unsuspected, disclosed and undisclosed, arising*
          *out of or in any way related to agreements, events, acts, or*
17        *conduct at any time prior to the date of this Agreement.*

18

19   FAC Ex. A at § 1(b).

20        General releases of this sort are valid and enforceable. *Deuley v. DynCorp*

21   *Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010). Such a release "is intended to cover

22   everything—what the parties presently have in mind, as well as what they do not

23

24   *Hospice v. Cnty. of San Diego*, 31 Cal. App. 4th 1048, 1053 (1995) ("a general
     release can be completely enforceable and act as a complete bar to all claims (known
25   or unknown at the time of the release) despite protestations by one of the parties
     that he did not intend to release certain types of claims."); *In re Mission Ins. Co.*,
26   41 Cal. App. 4th 828, 838 (1995) (finding a release "conclusively estops the parties
27   from reviving and relitigating the claim[s] released")

28

have in mind." *Corporate Property Assocs. 6 v. Hallwood Grp., Inc.*, 817 A.2d 777, 779 (Del. 2003) (quoting *Hob Tea Room v. Miller*, 89 A.2d 851, 856 (Del. 1952)). They are designed to provide "complete peace" between the parties. *In re Philadelphia Stock Exch., Inc.*, 945 A.2d 1123, 1137 (Del. 2008).

Plaintiff's claim is plainly one "arising out of or in any way related to agreements, events, acts, or conduct at any time proper to the date of" the CUPAR. The parties' intent that such claims were covered by the CUPAR's release language is confirmed by the limitation on the release providing that "Exhibit B [to the CUPAR] should survive this Section 1(b) and ***remain an obligation of TL x HF***." FAC Ex. A at § 1(b) (emphasis added). *See Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 2019 WL 4733430, at *3 (Del. Super. Ct. Sept. 27, 2019), *aff'd sub nom.* 238 A.3d 863 (Del. 2020) ("It is settled law, in Delaware, that a release must be read as a whole with the intent derived from the entire agreement." (quotation omitted).

Because the claim upon which Plaintiff's requested attachment is based has been released as against Loyalist, Plaintiff has not and cannot establish the probable validity of its claim against Loyalist. Consequently, the Court must deny Plaintiff's Application seeking an attachment order against Loyalist.

### 4.     Loyalist is not the alter ego of TLxHF.

Plaintiff does not allege that Loyalist is a party to the Transfer Agreement. Consequently, the only way Plaintiff can establish the probable validity of its claim for breach of the Transfer Agreement as against Loyalist is by establishing that Loyalist is the alter ego of TLxHF. Plaintiff has failed to do so. Therefore, putting aside the release issue, Plaintiff has not established the probable validity of its claim against Loyalist.

In determining whether alter ego liability applies, the law of the forum state controls. *Towe Antique Ford Found. v. I.R.S.,* 999 F.2d 1387, 1391 (9th Cir.1993);

*In re Schwarzkopf*, 626 F.3d 1032, 1037–38 (9th Cir. 2010). California recognizes alter ego liability where two conditions are met: First, where "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;" and, second, where "adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice." *In re Schwarzkopf*, 626 F.3d at 1038 (citation omitted).

"Imposition of alter ego liability is 'an extreme remedy, [to be] sparingly used' and 'approached with caution.'" *21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 255 F. Supp. 3d 1012, 1021 (S.D. Cal. 2017) (quotation omitted). It should be used in only "exceptional circumstances." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995). Thus, a "heavy burden rests on the shoulders of the party seeking to pierce the corporate veil." *Santa Clarita Org. for Planning & Env't v. Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (2016).

To establish alter ego liability, a plaintiff may not rely on merely conclusory allegations in the complaint; rather, it must demonstrate, with particularized facts, a prima facie basis for such liability, to wit, (1) "that there is such unity of interest and ownership that the separate personalities . . . no longer exist" and also (2) "that failure to disregard their separate identities would result in fraud or injustice." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017). "Underlying both of these factors is a general presumption in favor of respecting the corporate entity." *Ruiz v. Gen. Ins. Co. of Am.*, 2020 WL 4018274, at *4 (E.D. Cal. July 15, 2020) (granting motion to dismiss on alter ego grounds). Merely parroting the elements and listing the factors without factual support – as Plaintiff has done repeatedly and continuously here – is inadequate. Indeed, it is firmly settled that "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D.

1  Cal. 2014) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d, 1101,

2  1116 (C.D. Cal. 2003)) (internal quotation marks omitted).

3                    **(a)      Plaintiff has not established a "unity of interest."**

4          Plaintiff has not met its burden of establishing a "unity of interest" between

5  TLxHF and Loyalist necessary to establish the probable validity of Plaintiff's alter

6  ego claim. Factors courts consider in determining whether alter ego should be

7  applied include "commingling of funds and other assets of the two entities, the

8  holding out by one entity that it is liable for the debts of the other, identical equitable

9  ownership in the two entities, use of the same offices and employees, [] use of one

10  as a mere shell or conduit for the affairs of the other . . . inadequate capitalization,

11  disregard of corporate formalities, lack of segregation of corporate records, and

12  identical directors and officers." *Sonora Diamond Corp. v. Superior Court*, 83 Cal.

13  App. 4th 523, 538 (2000). Plaintiff has failed to establish any of these factors are

14  present here, or likely to be established.

15          First, for the reasons forth above, the Application is devoid of *any* admissible

16  evidence, let alone any competent admissible evidence concerning any of the "unity

17  of interest" factors. This is because (i) the verification of the FAC is defective (Cal.

18  Code Civ. Proc § 446(a)), but even if it was not, (ii) Plaintiff's verified FAC cannot

19  support the FAC (*VFS Financing, Inc.*, 620 F. Supp. 2d at 1097) and (iii) in any

20  event, Ms. Jin Zhang has not established any foundation or personal knowledge for

21  the allegations in the FAC, especially not the "alter ego" allegations.

22          Second, putting aside Plaintiff's lack of evidence, even if the Court

23  considered the bare bones and conclusory allegations in the FAC (which it should

24  not), *at most* Plaintiff alleges only that Loyalist and TLxHF have common

25  ownership and management. *See* FAC ¶¶ 28-30. But even if true (it is not, see

26  below), "[t]otal ownership and shared management personnel are alone insufficient

27

28

to establish the requisite level of control" necessary to satisfy the unity of interest prong. *Ranza*, 793 F.3d at 1073.

The FAC's remaining alter ego allegations are *all* premised upon Plaintiff's purported "information and belief," and merely parrot the language of the factors courts consider to determine alter ego, without supplying any specific facts or evidence that would support those allegations. *See* FAC ¶¶ 27, 33-35. These allegations are insufficient. *See Sandoval*, 34 F. Supp. 3d at 1040-41 (rejecting plaintiffs' allegations based solely "on information and belief" that defendants were alter egos of one another, that alleged alter ego was underfunded, not stand alone corporations, and had common management and pay practices, shared labor and materials, including distribution and billing system, and operated a common marketing system); *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 962-63 (N.D. Cal. 2015) (observing that conclusory allegations based solely on information and belief are insufficient to state claim for alter ego where the information and belief allegations merely mimic the language of factors that courts use to determine alter ego and do not supply any specific facts).

In fact, contrary to the unsubstantiated allegations in the FAC, Loyalist and TLxHF: (i) do not commingle their funds or assets, and are financially independent and maintain separate bank accounts; (ii) do not hold themselves out as liable for the debts of the other, and each has their own debtors and creditors; (iii) do not have identical equitable ownership, as the Loyalist is owned by five individual members, whereas TLxHF is wholly owned by Loyalist; (iv) do not use the same employees or officers; (v) are different companies engaged in different business, and one does not use the other as a mere shell or conduit for its affairs; (vi) are adequately capitalized, (vii) respect and comply with corporate formalities; (viii) maintain separate corporate records; (ix) and do not have identical officers and directors.

OPPOSITION TO PLAINTIFF'S APPLICATIONS FOR WRIT OF ATTACHMENT
AND ATTACHMENT ORDERS

1    *Compare* Declaration of Maxwell Ritz ¶¶ 2-16 *with* Declaration of Alexander Ritz

2    ¶¶ 2-15.

3                **(b)**       **Plaintiff has not established inequity would result by**

4                         **respecting Defendants' separate corporate identities.**

5           With respect to the second alter ego prong, Plaintiff fails to present any

6    evidence on which this Court could conclude that any inequity would result if the

7    distinction between Loyalist and TLxHF is maintained.

8           First, the same evidentiary defects identified above with respect to the "unity

9    of interest" prong apply with equal force with respect to the inequity prong.

10          Additionally, the inequity that allows a corporate veil to be pierced is not a

11   general notion of injustice, but instead the type of injustice that results only when

12   corporate separateness is illusory. *See Tomaselli v. Transamerica Ins. Co.*, 31 Cal.

13   Rptr. 2d 433, 443 (1994). Here, *at most* Plaintiff alleges in the FAC that it would be

14   inequitable to respect Defendants' corporate distinctiveness because Plaintiff may

15   not be able to recover from TLxHF. *See* FAC ¶¶ 22, 34-35. However, Plaintiff's

16   "capitalization allegation is based on information and belief, conclusory, and

17   completely unsupported by any facts." *Advanced Eng'g Sols. Co., LLC v. Pers.*

18   *Corner, LLC*, 2021 WL 1502705, at *5 (C.D. Cal. Feb. 25, 2021) (dismissing alter

19   ego claims). Plaintiff fails to present any *facts* demonstrating that TLxHF's

20   purported undercapitalization—or any action taken by TLxHF or Loyalist—was the

21   result of bad faith. *See id.* (citing *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d

22   1241, 1250 (9th Cir. 2017) (holding that under California law, "[f]inding an

23   'inequitable result' under the second element of alter ego liability 'generally

24   require[s] some evidence of bad faith conduct on the part of defendants'")) (citation

25   omitted).

26          It is clear from the allegations in the FAC that Plaintiff's alter ego claim is

27   based solely on its premature concern that TLxHF will be unable to satisfy any

28

1  judgment that Plaintiff may obtain in this action. But "[t]he inability of plaintiffs to
2  recover for their losses is not a sufficient inequity to justify overlooking the
3  corporate form." *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1247
4  (N.D. Cal. 2004); *see also Seymour v. Hull & Moreland Engineering*, 605 F.2d
5  1105, 1111 (9th Cir. 1979) (finding that an "inability to collect does not, by itself
6  constitute an inequitable result"). "Certainly, it is not sufficient to merely show that
7  a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up
8  such an unhappy circumstance as proof of an 'inequitable result.'" *Mid-Century Ins.*
9  *Co. v. Gardner*, 9 Cal.App.4th 1205, 1213 (1992) (quotation omitted).

10         Thus, even assuming *arguendo* that Plaintiff's contention that TLxHF is
11  undercapitalized is true, that would only affect Plaintiff if it obtains a judgment and
12  TLxHF is unable to satisfy that judgment. However, "[t]he alter ego doctrine does
13  not guard every unsatisfied creditor of a corporation but instead affords protection
14  where some conduct amounting to bad faith makes it inequitable for the corporate
15  owner to hide behind the corporate form. Difficulty in enforcing a judgment or
16  collecting a debt does not satisfy this standard." *Sonora Diamond Corp.* 83 Cal.
17  App. 4th 523 ("The parent is not 'exposed to liability for the obligations of [the
18  subsidiary] when [the parent] contributes funds to [the subsidiary] for the purpose
19  of assisting [the subsidiary] in meeting its financial obligations and not for the
20  purpose of perpetrating a fraud' ") (citation omitted). Plaintiff's potential inability
21  to collect on a future judgment is not an inequitable result that warrants application
22  of the alter ego doctrine. Instead, "it is a risk that is a normal incident of doing
23  business." *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313,
24  330 n. 50 (C.D. Cal. 2004) (noting that "California courts have rejected the view
25  that the potential difficulty a plaintiff faces collecting a judgment is an inequitable
26  result that warrants application of the alter ego doctrine" and that the Ninth Circuit

27
28

has noted that "[c]reditors . . . are always subject to the risk that debtors will file for bankruptcy").

Because Plaintiff has not presented *any* admissible evidence in support of its Applications, let alone sufficient evidence to demonstrate the probable validity of its alter ego claim, the Court should deny Plaintiff's request for an attachment order against Loyalist.

### 5.     Plaintiff fails to establish a sum due and owing.

Finally, it is completely uncertain and disputed what amount is due and owing from TLxHF to Plaintiff —if anything—and therefore attachment is improper, and certainly not in the amount of $350,000 requested.

Contrary to the allegations in the FAC, which are repeated in the Applications, it is not true that TLxHF has made "absolutely zero payment" to Plaintiff. *See* FAC ¶ 22; Application at 8. In fact, between the time Plaintiff alleges TLxHF and Plaintiff entered the Transfer Agreement (November 2018) and the time Plaintiff alleges the Assumed Obligation was to be paid (January 31, 2021), TLxHF paid to Plaintiff funds exceeding $350,000. *See* Declaration of Maxwell Ritz, ¶ 17 and Ex. 1 (bank records showing that between November 2018 and December 2020, TLxHF paid at least $350,000 to Plaintiff). Accordingly, Plaintiff's allegation that it has not received any payment from TLxHF is demonstrably false. Moreover, to the extent Plaintiff contends that some of the amounts it has received from TLxHF are not attributable to the alleged Assumed Obligation, Plaintiff has made no showing as to how it has accounted for the payments TLxHF has made to Plaintiff since the time the Transfer Obligation was allegedly entered.

Accordingly, because Plaintiff has failed to present any evidence of the amount purportedly owed to it under the Transfer Obligation, and given the substantial uncertainty regarding how much, if anything, TLxHF owes to Plaintiff,

Plaintiff has not shown the "probable validity" of its breach of contract claim and the Applications must be denied.

**C.      Plaintiff has not presented evidence that Defendants have any assets located in California subject to attachment.**

"A writ of attachment shall be directed to a levying officer in the county in which the property of the defendant described in the writ may be located and to any registered process server." Cal. Civ. Code § 488.020(a).

Consequently, a California court's jurisdiction to compel a levying officer to levy a writ of attachment is generally limited to property located within California. *Pac. Decision Sciences Corp. v. Superior Court,* 121 Cal. App. 4th 1100, 1107 (2004) ("[A] California court lacks jurisdiction to command a sheriff, marshal, or constable in Florida or New Jersey to levy a California writ of attachment on a New Jersey company or a Florida bank."); *accord Paul H. Ashchkar & Co. v. Curtis,* 327 F.2d 306, 307–308 (9th Cir.1963) (holding that a California district court had no authority to issue a writ of attachment on property located in New York).

Here, Plaintiff has failed to make any showing that Defendants, which Plaintiff admits are non-resident limited liability companies, have any assets located in California that could be subject to attachment. Accordingly, the Court should deny the Applications on that basis.

**D.      Plaintiff is not entitled to a temporary protective order.**

In its Applications, Plaintiff also requests issuance of a temporary protective order that "Defendants shall not dissolve or caused to be dissolved [TLxHF] without an order of this Court." As an initial matter, Plaintiff has made no effort to provide any authority that the Court could enter such relief, even if it were inclined to issue a temporary protective order.

More fundamentally, however, Plaintiff has not established that it is entitled to a temporary protective order in any form. With respect to applications for

22

temporary protective orders, "[t]he application shall state what relief is requested and shall be supported by an affidavit, which may be based upon information and belief, showing that the plaintiff would suffer great or irreparable injury (within the meaning of Section 485.019 if the temporary protective order were not issued." Cal. Code Civ. Proc. § 486.010(b).

Here, as explained above, the Applications lack any evidentiary support, and Plaintiff has presented no evidence that would support a temporary protective order. Further, Plaintiff has made no showing that it would suffer great or irreparable injury absent issuance of a temporary protective order. The only argument (without evidence) that Plaintiff makes to support its request for a temporary protective order is that TLxHF may dissolve or have insufficient funds to pay the amount Plaintiff claims it is owed. This is insufficient to establish irreparable harm. *See Western Steel and Ship Repair, Inc. v. RMI, Inc.*, 176 Cal. App. 3d 1108, 1114 (1986) (merely alleging that Plaintiff will be harmed and any assets that may be available or become available to pay the debt will be "diverted, concealed or otherwise made unavailable to pay any judgment" insufficient to satisfy statutory requirement of establishing that plaintiff would suffer great or irreparable injury); *Walters v. Newberry*, 2006 WL 3201042 at *3 (N.D. Cal. Nov. 6, 2006) (plaintiff failed to establish it would suffer great or irreparable injury where it provided no evidence that defendants generally fail to pay debts and there could be defenses that have not been raised).

Because Plaintiff has not demonstrated the probable validity of its claims, *or* that it is likely to suffer "great or irreparable injury the Court should deny Plaintiff's request for a temporary protective order.

///

///

///

OPPOSITION TO PLAINTIFF'S APPLICATIONS FOR WRIT OF ATTACHMENT
AND ATTACHMENT ORDERS

1

2

**E.     If the Court grants the Applications, Plaintiff should be required to post a substantial undertaking.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

If the Court is inclined to order attachment, Plaintiffs are required to post an undertaking of at least $10,000. *See* Cal. Code Civ. Proc. § 489.220. However, Defendants object to only a $10,000 bond. The amount of the undertaking should be increased to the amount for "the probable recovery for wrongful attachment if it is ultimately determined that the attachment was wrongful." Cal. Code Civ. Proc § 489.220(b). Where defendants seek to increase the amount of the attachment bond, defendants "need not establish the amount of the undertaking to the degree required for a motion to recover actual damages from the wrongful attachment." *Arabian Gas and Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, 2017 WL 1175592 at * 5 (N.D. Cal. 2017) (granting request to increase an attachment bond under California law.). "California law does not restrict an increase in an undertaking to 'actual damages'; it expressly permits Defendants to recover all fees and costs including attorneys' fees 'reasonably expended' in defeating the attachment, as well as all damages proximately caused by the wrongful attachment." *Id.* at *7 (citing Cal. Code Civ. Proc. § 490.020(a)).

18

19

20

21

22

23

24

25

26

27

The undertaking should be "in an amount sufficient to indemnify [defendant] for damages likely to result from the levy of attachment in the event the attachment ultimately proves to have been 'wrongful.' It is the optimal function of the remedy of attachment to provide the plaintiff with security up to the amount of his claim at a cost that does not render the remedy prohibitive while still affording to the defendant an undertaking in an amount that will adequately satisfy his damages for wrongful attachment." *North Hollywood Marble Co. v. Superior Court*, 157 Cal. App. 3d 683, 690 (1984). If attachment is later deemed wrongful, plaintiffs' liability for wrongful attachment "is limited by the amount of the undertaking." Cal. Code Civ. Proc. § 490.020(b); *see also American Student Financial Group, Inc. v.*

28

24

1   *Aequitas Capital Management, Inc.*, 2014 WL 12772263 at *4 (S.D. Cal. 2014)

2   (ruling that $240,000 (about 10% of the attachment amount) is a reasonable

3   undertaking).

4       Here too, Defendants request that Plaintiffs be required to post an

5   undertaking of at least 10% of the attachment amount ordered, if any.

6   **III.    CONCLUSION**

7       For the forgoing reasons, the Court should deny the Applications in their

8   entirety.

9

10  Dated: May 25, 2023          Respectfully submitted:
    **BIENERT KATZMAN**

11  **LITTRELL WILLIAMS LLP**
    By:    /s/ Anthony R. Bisconti

12            Anthony R. Bisconti

13            Attorneys for TL x HF, LLC and
              Loyalist, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*/s/ Toni Thomas*

Toni Thomas